UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RACHEL SEMIDEY,

    Plaintiff,

v.                                                       Case No. 8:24-cv-1584-CPT

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,[1]

    Defendant.
_____/

**O R D E R**

    The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Doc. 15). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

    The Plaintiff was born in 1960, completed high school and two years of college, and has past relevant work experience as a real estate agent. (R. 585–86, 663). The Plaintiff applied for DIB and SSI in July 2018, alleging disability as of March 2018 due

---

[1] Mr. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Bisignano is substituted for the former Acting Commissioner, Mr. Leland Dudek, as the Defendant in this suit.

to anxiety, osteoporosis, severe depression, and chronic panic attacks. *Id.* at 200–12, 235. The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. *Id.* at 121–28, 134–45.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2020. *Id.* at 32–60, 146. The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In March 2020, the ALJ issued a decision finding that the Plaintiff was not disabled. *Id.* at 12–31. The Appeals Council declined to review the ALJ's decision, *id.* at 1–6, which rendered that decision the final decision of the Commissioner, *Viverette v. Comm'r of Soc. Sec.*, 13 F. 4th 1309, 1313 (11th Cir. 2021) (citation omitted).

The Plaintiff thereafter filed an appeal of the Commissioner's decision in federal court. (R. 641–45). While that appeal was pending, the Plaintiff submitted new applications for DIB and SSI in December 2021, again alleging disability as of March 2018. *Id.* at 783–89. In September 2022, the court vacated the Commissioner's decision and remanded the case for further administrative proceedings. *Id.* at 646–59.

The SSA initially denied the Plaintiff's new claims in February 2023. *Id.* at 710–14. Not long after, in April 2023, the Appeals Council remanded the original claims to the ALJ and directed the ALJ to resolve the remanded claims and the new claims simultaneously. *Id.* at 562, 582.

On remand, the ALJ presided over another hearing in August 2023. *Id.* at 578–614. As with the first ALJ hearing, the Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* A VE and a psychologist also testified. *Id.*

In March 2024, the ALJ issued a decision that was partially favorable to the Plaintiff. *Id.* at 532–49. In particular, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date in March 2018; (2) had the severe impairments of Takotsubo cardiomyopathy,[2] generalized anxiety disorder, major depressive disorder, and a history of myocardial infarction; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[3] (4) had the residual functional capacity (RFC) to perform medium work with some limitations prior to December 8, 2021, and light work with some restrictions following that date; and (5) based on the VE's testimony, could not engage in her past relevant work but could perform other jobs that exist in significant number in the national economy up until December 8, 2021,

---

[2] Takotsubo cardiomyopathy, also known as broken-heart syndrome, involves the weakening of the heart's left ventricle and can occur when a person experiences severe physical or emotional stress. *See Heart Health, Broken-heart syndrome (takotsubo cardiomyopathy)*, Harvard Health Publishing, https://www.health.harvard.edu/heart-health/takotsubo-cardiomyopathy-broken-heart-syndrome (last visited September 24, 2025).

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

after which she was disabled. *Id.* at 532–59.[4] In light of these findings, the ALJ concluded that the Plaintiff was not disabled prior to December 8, 2021. *Id.* at 549. As with the ALJ's March 2020 decision, the ALJ's March 2024 decision ultimately became the final decision of the Commissioner. *Viverette*, 13 F.4th at 1313 (citation omitted).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[5] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.

---

[4] Prior to December 8, the Plaintiff was an individual of advanced age. (R. 547). As of December 8, however, the Plaintiff's age category changed to an individual closely approaching retirement age, and she was deemed disabled as of that date. *Id.*; 20 C.F.R. §§ 404.1568, 416.968.
[5] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

§ 404.1520(a)(4)).[6] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial

---

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's sole challenge on appeal is that the ALJ did not properly analyze whether she was disabled prior to December 8, 2021. (Doc. 15). To resolve this challenge, some background regarding the statutory and regulatory framework governing disability onset dates is necessary.

A claimant's disability onset date is "the earliest date that the claimant meets both the definition of disability and the non-medical requirements" under the Act. Social Security Ruling (SSR) 18-01p, 2018 WL 4945639, at *4 (S.S.A. Oct. 2, 2018). For SSI, a claimant becomes eligible for benefits in the first month that she is both disabled and has an application on file. *See* 20 C.F.R. § 416.330. For DIB, a claimant

6

is eligible for benefits if she demonstrates disability on or before the last date on which she was insured. 42 U.S.C. § 423(a)(1)(A).

SSR 18-01p addresses the showing a claimant must make to the SSA to establish her disability onset date. It states, in pertinent part:

> We need specific medical evidence to determine whether a claimant meets the statutory definition of disability. In general, an individual has a statutory obligation to provide us with the evidence to prove to us that he or she is disabled. This obligation includes providing us with evidence to prove to us when he or she first met the statutory definition of disability. The Act also precludes us from finding that an individual is disabled unless he or she submits such evidence to us.

SSR 18-01p, 2018 WL 4945639, at *4 (S.S.A. Oct. 2, 2018) (footnotes omitted).

SSR 18-01p further provides that in situations where an ALJ must infer the date on which a claimant first meets the statutory definition of disability, the ALJ may solicit testimony or seek interrogatory responses from a medical expert. *Id.* at *6. SSR 18-01p makes clear, however, that "[t]he decision to call on the services of [a medical expert] is always at the ALJ's discretion," and that "[n]either the claimant nor . . . her representative can require an ALJ" to do so. *Id.*

In this case, the Plaintiff sought treatment in the emergency room on December 8, 2021, due to the "sudden onset of nausea, vomiting, diarrhea, and . . . abdominal pain," as well as "intermittent chest pain." (R. 545). The Plaintiff left the hospital that same day against medical advice but returned the next day with similar complaints. *Id.* at 1081, 1093. Upon being readmitted, the Plaintiff reported that she was "pretty

7

active and d[id] Zumba,[7] though lately she had to decrease her classes from [sixty] minutes to [thirty] minutes and had been getting an aching feeling in her throat during classes." *Id.* at 1093. The Plaintiff was eventually diagnosed with myocardial infarction and treated for takotsubo cardiomyopathy. *Id.* at 545–46.

In her decision, the ALJ found—as described above—that the Plaintiff had the RFC to perform medium work prior to her December 8, 2021, hospital admission and light work thereafter. *Id.* at 540, 545. In arriving at this determination, the ALJ paid "special attention" to the Plaintiff's "complaints of fatigue noted throughout the record" but concluded that they did not completely cohere with the other information before the ALJ. *Id.* at 543–44. The ALJ explained:

> The [Plaintiff] reported weakness and fatigue in her June of 2018 office visit. Chronic fatigue was noted in January of 2020 where the [Plaintiff] reported worsening of fatigue in the morning with an energy level of 4/10 and an inability to do basic home chores as she gets tired easily. She reported fatigue affecting her work as a realtor as well. Again, in August of 2021 she alleged fatigue and loss of energy almost every day with easily fatiguability. The undersigned has acknowledged these subjective complaints, however the medical evidence record is not fully consistent with the [Plaintiff's] reported level of fatigue as the [Plaintiff] continued to attend Zumba activities, an activity well known for its significant cardiovascular activities requiring some level of stamina and is exertionally taxing. While treatment notes indicate during one visit she had to decrease her usual[ ] Zumba class from [sixty] minutes to [thirty]

---

[7] According to the Plaintiff, Zumba is a "fun and energetic dance workout" involving aerobic exercise. (Doc. 15-2 at 1).

8

>minutes, she has admitted that she remains very active and continues to partake in Zumba classes.

*Id.* at 543–44 (internal record citations omitted).

The Plaintiff now argues that the ALJ should have considered whether her symptoms of "severe and chronic fatigue" before her December 8, 2021, hospitalization had any correlation to her later-diagnosed condition of significant cardiomyopathy. (Doc. 15 at 4–6). In an attempt to buttress this contention, the Plaintiff asserts that "common sense and logic dictate that [she] did not go from having a perfectly healthy heart to having severe cardiomyopathy overnight." *Id.* at 5. The Plaintiff additionally cites treatment records from her mental health provider in 2021 which reference her complaints of fatigue, decreased concentration, and lack of energy, and she intimates that the ALJ did not adequately address this evidence in her decision. *Id.* at 4; (R. 962, 1004). The Plaintiff's argument fails.

Contrary to the Plaintiff's suggestion, an ALJ is not obligated to expressly analyze every piece of evidence in her decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Instead, the ALJ need only ground her RFC determination on the claimant's condition "taken as a whole," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted), after assessing all the material information presented, 20 C.F.R. §§ 404.1545(a), 416.945. As long as a reviewing court can discern from the ALJ's decision that she took into account all the

relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. *Id.*

It is evident that the ALJ examined all the pertinent evidence here. The ALJ discussed the Plaintiff's reports of fatigue throughout her decision and explicitly did so in discounting the Plaintiff's subjective complaints. (R. 540–47). By the Court's lights, the ALJ's decision sufficiently establishes that she took into account the full record in evaluating the Plaintiff's medical condition in its entirety. *See O'Neal v. Comm'r of Soc. Sec.*, 2017 WL 875789, at *4 (M.D. Fla. Mar. 6, 2017) (finding substantial evidence bolstered the ALJ's determination of the claimant's onset date in part because the ALJ discounted the claimant's self-reports as not being entirely credible).

Substantial evidence also supports the ALJ's assessment of the Plaintiff's cardiac-related issues. At the outset and as the government notes in its submission, it is important to emphasize that the ALJ did not find that the Plaintiff's heart problems materialized for the first time on December 8, 2021, only that they were not disabling before that date. (Doc. 17 at 9). Indeed, as the government also observes, the ALJ found that the Plaintiff's heart condition was a severe, medically determinable impairment as of the Plaintiff's March 2018 alleged onset date. *Id.* (citing R. 538).

Putting aside these concerns, as explained earlier, the ALJ stated in her decision that the Plaintiff's hospital admission on December 8, 2021, stemmed from a "*sudden onset*" of symptoms (R. 545) (emphasis added), which buttresses the ALJ's finding that the Plaintiff's difficulties with her heart were not previously disabling. Consistent with this conclusion and as also discussed above, the ALJ pointed out that the Plaintiff

10

told her providers at the hospital that she was active and that she continued to partake in her "Zumba classes," albeit for thirty rather sixty minutes. *Id*. at 544.

The Plaintiff's assertion that the ALJ "unfairly made assumptions as to how [the Plaintiff] performed" Zumba is unavailing. (Doc. 15 at 6). The gist of the Plaintiff's contention is that, according to information from a Zumba website which the Plaintiff attaches to her memorandum, this form of aerobic exercise is "available to persons with disabilities and can be modified to accommodate their specific needs." *Id*. (citing Doc. 15-2).

There are a number of problems with this line of attack. To start, the Plaintiff does not submit any authority that would permit the Court to consider materials which are not part of the record. The Plaintiff also ignores her admission contemporaneous with her Zumba participation statement that she remained "pretty active." (R. 545, 1093). Moreover, at bottom, the Plaintiff's argument essentially invites the Court to reweigh the evidence, which the Court cannot do. *Viverette*, 13 F.4th at 1314; *Carter*, 726 F. App'x at 739.

The Plaintiff's final contention in support of her challenge is that the ALJ should have retained an expert to determine when she became disabled. (Doc. 15 at 5–6). As noted previously, however, SSR 18-01p leaves it to the discretion of the ALJ whether to call on the services of a medical expert. *See* SSR 18-01p, 2018 WL 4945639, at *2 ("[T]his SSR clarifies that an [ALJ] may, but is not required to, call upon the services of a medical expert . . . to assist with inferring the date that the claimant first met the statutory definition of disability."). For the reasons set forth above, the ALJ's

11

determination regarding the Plaintiff's disability onset date is substantiated by the record, and it was therefore not incumbent on the ALJ to solicit the assistance of a medical advisor. *See Dintruff v. Saul*, 2020 WL 13389829, at *3 (M.D. Fla. May 4, 2020) ("The medical evidence was not ambiguous or inadequate and thus the ALJ was not required to consult a medical advisor.").

IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 26th day of September 2025.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record